UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TAMARA SEXTON, individually and on
behalf of all others similarly situated,

        Plaintiff,

      v.

TARGET CORPORATE SERVICES, INC.
and TD BANK USA, N.A.,

        Defendants.

Case No. 21-CV-1492

---

## DECISION AND ORDER ON PLAINTIFF'S
## MOTION TO REMAND TO STATE COURT

---

On November 26, 2021, Tamara Sexton filed a class action complaint in Milwaukee County Circuit Court against Target Corporate Services, Inc. and TD Bank USA, N.A. (collectively "the defendants") alleging violations of the Wisconsin Consumer Act ("WCA"). (Docket # 1-2.) The defendants removed the action to this Court under the Class Action Fairness Act ("CAFA") on December 31, 2021. (Docket # 1.) Sexton now moves to remand the case back to state court for lack of subject matter jurisdiction and for an award of costs and fees for the improper removal. (Docket # 8.) For the reasons explained below, Sexton's motion is granted.

## BACKGROUND

According to Sexton's complaint, on or around January 13, 2020, the defendants sent her a letter regarding a debt she allegedly owed to TD Bank, an issuer of Target store branded credit cards. (Docket # 1-2 at 3.) The letter allegedly represented that Sexton had an account balance of $1,964.49, with a payment of $208.00 due by January 28, 2020. (*Id.* at 4.) Sexton

alleges that pursuant to the WCA, a merchant must provide a customer with notice of default and the customer's right to cure default before a lender may accelerate the balance of a consumer credit transaction. (*Id.* at 4–5.) She alleges that the defendants' letter contained the following notice pursuant to the WCA's requirements:

**NOTICE OF RIGHT TO CURE DEFAULT**

> Our records show that you're late in making your payments, which made you default on the consumer credit transaction shown below:
>
> Target - Credit Account Agreement
> Account # 6868, in the amount of $208.00.
>
> You may cure the default (bring your account current) by paying $208.00, which includes late fees of $78.00, on or before 01/28/2020.

(*Id.* at 4.)

Sexton alleges that the defendants' letter is misleading, deceptive, and unconscionable; does not fairly provide consumers with notice of their right to cure default; and does not satisfy the defendants' statutory or contractual obligations. (*Id.* at 10.) Specifically, she alleges that the letter purports to accelerate the installment payment due on January 28, 2020 and describes the installment as late and placing Sexton's account into default, even though the letter was mailed on January 13, 2020, two weeks before the payment was actually due. (*Id.* at 6.) Sexton alleges that an unsophisticated consumer would understand the letter to mean that she could not cure the default without paying $208.00, when, pursuant to Wisconsin law, a consumer could avoid acceleration and bring the account current by tendering the previous month's payment balance by January 27, 2020. (*Id.*) Sexton further alleges that she was "confused and misled" by the letter. (*Id.* at 7.)

## ANALYSIS

Sexton argues that this case should be remanded to state court for lack of subject matter jurisdiction because she lacks Article III standing to pursue her WCA claims in federal court. (Docket # 9 at 2.) Under 28 U.S.C. § 1447(c), a case removed from state court must be remanded if it appears, at any time before final judgment is entered, that the district court lacks subject matter jurisdiction. Additionally, an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id*. I will consider the issues of Article III standing and fees and costs in turn.[1]

1. *Article III Standing*

Article III of the Constitution limits the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. For a case or controversy to exist under Article III, "the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2203 (2021) (internal quotation marks and citation omitted). Standing consists of three elements: (1) a concrete and particularized injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). When a case is removed from state court, "the defendant, as the proponent of federal jurisdiction, must establish the plaintiff's Article III standing." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020). Any doubts regarding the propriety of removal are resolved "in favor of the plaintiff's choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

---

[1] The parties also dispute whether Sexton's claims are subject to a liability cap under the WCA and thus fall below the CAFA's threshold requirement of an amount in controversy exceeding $5 million. (Docket # 9 at 9, Docket # 10 at 3–8.) Because Sexton's complaint does not allege Article III standing, however, I need not consider this argument.

Sexton asserts that her complaint fails to allege that she suffered a concrete injury in fact. (Docket # 9 at 2.) For the purposes of Article III standing, an injury is concrete if it is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Concrete injuries include both "traditional tangible harms, such as physical harms and monetary harms," and intangible harms, including "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 141 S. Ct. at 2204. Furthermore, the Supreme Court has rejected the notion that a plaintiff "automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U. S. at 341. Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

Sexton asserts that her allegations regarding the defendants' alleged violations of the WCA are indistinguishable from those rejected as insufficient by the Seventh Circuit to allege a concrete injury for Article III standing in the context of the Fair Debt Collection Practices Act ("FDCPA"). The FDCPA is a federal statute that seeks to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). In a series of recent decisions, the Seventh Circuit has expressed that "the violation of an FDCPA provision . . . does not necessarily cause an injury in fact." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021); *see also Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Nettles v. Midland Funding LLC*, 983

F.3d 896 (7th Cir. 2020); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021).

Rather, to fulfill the injury in fact requirement, the FDCPA violation must have "harmed or presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect." *Casillas*, 926 F.3d at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)). For example, an FDCPA violation might cause harm "if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 780. Moreover, psychological states such as confusion, aggravation, and annoyance that result from an FDCPA violation do not, in and of themselves, constitute injuries in fact. *Brunett*, 982 F.3d at 1068.

While Sexton's complaint falls under the WCA, the Seventh Circuit's standing analysis in the FDCPA context is instructive. Much like the FDCPA, among the stated purposes and policies of the WCA are to protect customers against unfair, deceptive, false, misleading, and unconscionable practices by merchants and "coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act." Wis. Stat. § 421.102. Furthermore, Wisconsin courts follow the policies underlying the FDCPA when interpreting the WCA. *See Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 45, 325 Wis. 2d 135, 161, 785 N.W.2d 302, 314. Thus, the analysis of whether Sexton meets federal standing requirements for her WCA claims is informed by the Seventh Circuit's interpretation of the WCA's federal counterpart.

Again, Sexton alleges that the defendants' letter is "misleading, deceptive, and unconscionable, does not fairly provide consumers with notice of their right to cure the default, and does not satisfy [the defendants'] statutory or contractual obligations." (Docket

# 1-2 at 10.) However, the complaint contains no allegations of a concrete injury in fact presented by the defendants' alleged WCA violations.

The defendants contend that Sexton's complaint alleges a concrete injury in fact because she not only alleges that the letter confused her, but also that she was misled by it. (Docket # 10 at 10.) According to the defendants, while confusion may not suffice for Article III standing, being misled "implies a more concrete result—some change in position, or some choice not to change position—than mere confusion." (*Id.*) They add that after receiving the letter, Sexton made a $50 payment on January 28, 2020, which was "less than the minimum due, but a significant amount, which she might not have parted with but for the letter." (*Id.*) They further note that Sexton incurred a $40 late fee because her payment was less than the minimum due. (*Id.* at 10–11.)

At the pleading stage, the court is "limited to the complaint's 'general factual allegations of injury resulting from the defendant's conduct' to evaluate standing." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 667 (7th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). While monetary damages are certainly a tangible harm, the defendants' conjecture about Sexton's payment is not plausibly suggested by the allegations in the complaint. The allegation that Sexton was misled by the letter, without more, is insufficient to establish a concrete injury in fact.

The defendants next assert that Sexton alleges an informational injury that constitutes concrete harm for Article III standing. (Docket # 10 at 11.) The defendants argue that "Sexton claims that the information omitted from Target's letter 'confused and misled' her, and thereby impaired her ability to use that information in deciding whether and when to pay—the statute's substantive purpose in requiring the disclosure." (Docket # 10 at 12.) They also

cite two cases decided by this Court, *Slomanski v. Alliance Collection Agencies, Inc.*, 2020 U.S. Dist. LEXIS 224307 (E.D. Wis. Dec. 1, 2020) and *Degroot v. Client Servs., Inc.*, No. 19-C-951, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020), as support for the position that a plaintiff has Article III standing to sue whenever the plaintiff is entitled to receive and review substantive information in a debt collection letter. (*Id.* at 12–13.)

In the FDCPA context, the "failure to provide information that is required . . . inflicts a concrete injury only if it impairs a plaintiff's ability to use the withheld information for a substantive purpose that the statute envisioned." *Spuhler*, 983 F.3d at 286. Here, there are no allegations in the complaint as to how Sexton's ability to use the allegedly inaccurate information in the defendants' letter was impaired. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (no standing in FDCPA case where plaintiff "didn't make a payment, promise to do so, or other-wise act to her detriment in response to anything in or omitted" from an allegedly misleading debt collection letter). Moreover, the district court cases cited by the defendants were decided before the Seventh Circuit explained that Article III "does not distinguish procedural from substantive claims; it makes injury essential to all litigation in federal court." *Gunn*, 982 F.3d. at 1072. As such, Sexton's allegation that the defendants deprived her of accurate information regarding her alleged debt does not translate into a concrete injury in fact for the purposes of Article III standing.

Finally, the defendants argue that Sexton has sufficiently alleged a concrete injury in fact because she alleges that the defendants' letter "does not satisfy [the defendants'] . . . contractual obligations." (Docket # 10 at 14.) They assert that a claim for breach of contract is "perhaps the oldest, most familiar harm traditionally recognized as providing a basis for a lawsuit in American courts," and Sexton's "explicit allegation equating her statutory claim

with a claim for breach of contract establishes the constitutional standing necessary for a federal forum." (*Id.*) This argument is unpersuasive. It is a stretch to equate Sexton's conclusory statement that the defendants' letter failed to satisfy their contractual obligations with an express breach of contract claim, which Sexton has not pled. The defendants provide no support for the conclusion that a conclusory allegation, without any explanation of resulting harm, is sufficient for Article III standing.

For these reasons, I find that Sexton lacks Article III standing and as a result, this Court lacks subject matter jurisdiction. I will remand this case back to state court.

    *2.      Fees and Costs*

Sexton contends that the defendants' removal of this case to federal court was objectively unreasonable and warrants an award of the fees and costs incurred in connection with the improper removal. (Docket # 9 at 8.) The defendants seemingly contend that an award of fees and costs is unjustified because Sexton's attorney did not mention Article III standing as a basis for remand in response to the defendants' notice of removal. (Docket # 10 at 15–16.) Again, the removal statute provides that an order remanding a case to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has stated that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

The defendants' removal of this case to federal court was objectively unreasonable. As explained above, at the time of removal, several Seventh Circuit decisions made clear its position on standing for alleged FDCPA violations, particularly with respect to deceptive or

misleading debt collection letters. Considering these circumstances, the defendants did not reasonably remove Sexton's WCA action to federal court. As such, Sexton is entitled to the costs and fees incurred as a result of the improper removal.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the plaintiff's motion to remand and for an award of costs and fees (Docket # 8) is **GRANTED**. The Clerk of Court is directed to remand this case, number 21-CV-1492 in the U.S. District Court for the Eastern District of Wisconsin, to Milwaukee County Circuit Court.

The plaintiff must submit an affidavit or other certification detailing the reasonable costs and fees incurred as a result of the removal within 10 days of the date of this order. The defendants will have 10 days from the date of the plaintiff's affidavit to respond.

Dated at Milwaukee, Wisconsin this 19th day of July, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge